■ ARKIN KAPLAN RICE LLP et al., Appellants, v HOWARD KAPLAN et al., Respondents. [991 NYS2d 597]—

Order, Supreme Court, New York County (O. Peter Sherwood, J.), entered on or about June 6, 2013, which granted defendants' motion for partial summary judgment to the extent of dismissing plaintiffs' claim with respect to defendants' personal liability under the sublease after the date of their withdrawal from plaintiff Arkin Kaplan Rice, LLP (AKR), and denied plaintiffs' cross motion for partial summary judgment declaring that defendants are jointly and severally liable for all remaining obligations under the sublease, both in their individual capaci-

ties and as partners of AKR, unanimously modified, on the law, to the extent of declaring that AKR is liable for obligations under the sublease through the duration of the extended period, defendants Howard Kaplan and Michelle Rice are not jointly and severally liable for all remaining obligations under the sublease in their individual capacities, and Arkin Solbakken LLP is not the successor to AKR, and otherwise affirmed, without costs.

In 1968, plaintiff Stanley S. Arkin (Arkin) founded the law firm Arkin Horan. In March 1996, the firm changed its name to Arkin, Schaffer & Kaplan LLP (ASK). The firm represented corporate entities and individuals in civil litigation. On August 25, 1999, ASK entered into a sublease with Ladenburg Thalmann & Co., Inc. (the sublandlord) for office space on the 35th floor of 590 Madison Avenue (the sublease). ASK, Arkin, defendant Howard Kaplan, nonparties Hyman Schaffer, Jeffrey Kaplan, and Mark S. Cohen executed the sublease, as subtenants.

Section 24 of the sublease provides, in relevant part:

"A. Notwithstanding anything herein contained to the contrary, upon the admission of any new partner (hereinafter referred to as a 'New Partner') to the Partnership, such New Partner shall be jointly and severally liable for the performance of Subtenant's obligations under this Sublease without regard to any limitation of liability inherent in the business organization of the Partnership and Subtenant shall deliver confirmation thereof to Sublandlord within ten (10) days of such New Partner's admission to the Partnership.

"B. Notwithstanding anything herein contained to the contrary, upon the withdrawal of any partner (other than Stanley S. Arkin) from the Partnership (hereinafter referred to as a 'Withdrawing Partner'), such Withdrawing Partner shall, upon the date of withdrawal from the Partnership (hereinafter referred to as the 'Withdrawal Date'), be deemed to be released from this Sublease as of the Withdrawal Date and shall have no further rights or obligations under this Sublease from and after the Withdrawal Date."

In August 2002, Arkin Kaplan LLP (Arkin Kaplan) (successor in interest to ASK), Arkin, Schaffer, Howard Kaplan, nonparty Anthony B. Coles, defendant Michelle Rice, and the sublandlord executed an amendment to the sublease (the first amendment). The purpose of the first amendment was to expand the sublease space on the 35th floor. In the amendment, the sublandlord acknowledged that Jeffrey Kaplan and Mark S. Cohen had withdrawn as partners of Arkin Kaplan and were, therefore,

"released from any and all obligations under the Sublease" and that Coles and Rice were admitted as partners of Arkin Kaplan.

In October 2004, Arkin Kaplan, Stanley Arkin, Howard Kaplan, Rice, nonparty Sean O'Brien and the sublandlord executed a second amendment to the sublease (the second amendment). The purpose of this amendment was to add all of the remaining space on the 35th floor. This amendment also granted Arkin Kaplan the option to extend the sublease's June 30, 2010 expiration date to June 29, 2015, upon six months' written notice to the sublandlord. In the second amendment, the sublandlord acknowledged that Jeffrey Kaplan had withdrawn as a partner of Arkin Kaplan and was released from any and all obligations under the sublease.

In July 2006, when defendant Rice was elevated to a named partner, Arkin Kaplan changed its name to AKR. By letter dated November 16, 2009, AKR informed the sublandlord that it wished to extend the sublease for an additional five years, to June 29, 2015. In July 2011, Sean O'Brien, a partner at AKR, withdrew from the firm.

In March 2012, AKR's partners began mediation in an attempt to resolve certain differences concerning the firm's structure. By letter dated May 17, 2012, counsel for defendants Kaplan and Rice informed Arkin's counsel that "[t]here is 'no continuing firm,' " as "[AKR] is a partnership-in-dissolution."[1] The AKR partners-in-dissolution were plaintiffs Arkin and Lisa Solbakken and defendants Kaplan and Rice.

Also on May 17, 2012, Kaplan and Rice announced the formation of their new law firm, defendant Kaplan Rice LLP (Kaplan Rice).[2] That same day, AKR amended its certificate of registration with the Department of State to change its name to Arkin Solbakken LLP (Arkin Solbakken).

On June 26, 2012, Kaplan and Rice informed the sublandlord in writing that they had withdrawn from their obligations as signatories on the sublease. The sublandlord responded the same day, rejecting Kaplan and Rice's withdrawal and notifying them both that it intended to hold them liable under the sublease despite AKR's dissolution.

On July 10, 2012, Arkin Solbakken submitted a filing with the Department of State, purporting to change its name back to

---

1. The motion court noted that, for purposes of the parties' motions and pending a final determination on the merits, the date of AKR's dissolution was May 17, 2012.

2. At the time of dissolution, AKR was a 12-attorney law firm; most of the associates, along with several staff members, eventually went to work for Kaplan Rice.

Arkin Kaplan Rice LLP. The next day, July 11, 2012, Arkin Solbakken filed a new certificate of registration with the Department of State, registering the firm as a limited liability partnership. That same month, Arkin, on behalf of AKR, served on Kaplan and Rice notices to quit and vacate, in an attempt to evict them from the premises on or before August 15, 2012. Arkin also replaced AKR on the firm's office door with the name Arkin Solbakken.

Shortly thereafter, plaintiffs AKR, Arkin, and Solbakken commenced this action against Kaplan, Rice, and Kaplan Rice.[3] By amended complaint, plaintiffs allege that AKR's partners-in-dissolution continued to operate two separate law partnerships out of the premises and that defendants remained in the space from May 18, 2012 to August 31, 2012 but refused to compensate AKR for their use of the space and for the services they used. The complaint further alleges that defendants converted assets belonging to AKR and engaged in other actions that interfered with the orderly winding up of AKR's affairs. For example, plaintiffs allege, Kaplan and Rice prevented them from paying rent under the sublease.

Although the complaint asserts nine causes of action, defendants moved for partial summary judgment only on the causes of action for breach of fiduciary duty, tortious interference with contract, and declaratory judgment relating to the lease obligations. In the cause of action for breach of fiduciary duty, plaintiffs seek an injunction (a) enjoining and restraining Kaplan, Rice and their employees from "preventing, delaying or in any way interfering with the payment by AKR" of rent under the sublease and any other payments owed to other entities and (b) directing Kaplan, Rice and their employees to report to AKR regarding any work they may have done for Kaplan Rice between April 2012 and May 17, 2012. The cause of action for tortious interference with contract seeks essentially the same injunctive relief as the first cause of action. The eighth cause of action for declaratory judgment seeks a declaration that AKR's rent obligations under the sublease, through its extended expiration, are AKR's liabilities and that AKR's assets must be paid or reserved against these liabilities before any distribution of AKR assets to its partners.

Defendants moved for partial summary judgment dismissing plaintiffs' claims that sought to have AKR's rent obligations

---

**3.** In November 2012, Kaplan and Rice commenced a separate action against Arkin, Solbakken and Arkin Solbakken LLP, asserting one cause of action for an accounting (*Howard J. Kaplan and Michelle A. Rice v Stanley A. Arkin, Lisa C. Solbakken and Arkin Solbakken LLP* [index No. 653835/2012]).

paid out of AKR's partnership assets. Plaintiffs opposed the motion and cross-moved for partial summary judgment, seeking a declaration that defendants Kaplan and Rice remained jointly and severally liable for all remaining obligations under the sublease through its expiration on June 29, 2015.

The motion court correctly found that the sublease at issue is a contract subject to general principles of contract interpretation; the plain language of section 24 (B) of the sublease releases any withdrawing partner, other than Arkin, from any further rights or obligations under the sublease upon the date of withdrawal. Indeed, the language in section 24 (B) is "reasonably susceptible" to only one interpretation (*Chimart Assoc. v Paul*, 66 NY2d 570, 573 [1986]). The motion court therefore properly rejected plaintiffs' argument that section 24 (B) referred only to Kaplan and Rice's personal liability, and therefore, that Kaplan and Rice's share of the partnership assets should be used to pay rent or other obligations to the sublandlord under the sublease after they withdrew from the firm. On the contrary, section 24 (B) does not contain any limitations or qualifications, and there is no basis to interpret the parties' agreement as impliedly stating something that they did not specifically include (*see RM 14 FK Corp. v Bank One Trust Co., N.A.*, 37 AD3d 272, 274 [1st Dept 2007]). Accordingly, defendants Howard Kaplan and Michelle Rice, as withdrawing partners, were released from any further obligations, including the requirement to pay rent, under the sublease as of the date of their withdrawal.

Similarly, plaintiffs argue that Partnership Law § 71 mandates the payment of creditors from partnership assets before partners are individually required to make contributions to satisfy the partnership's debts and liabilities, and thus, section 24 (B) of the sublease does not release Kaplan and Rice from liability under the sublease. We reject this argument. While New York Partnership Law sets forth the rules for distribution of partnership assets and liabilities in "settling accounts between the partners after dissolution," section 71 expressly provides that those rules are "subject to any agreement to the contrary." Here, the parties had a contrary agreement—namely, the sublease.

However, we disagree with the motion court's finding that because AKR never signed the sublease, its liability ended as of the date of dissolution. Arkin Kaplan last amended the sublease in 2004 and Arkin, Kaplan, and Rice, among other partners, signed the amendment. When Rice became a named partner in the law firm in 2006 and Arkin Kaplan formally changed its name to Arkin Kaplan Rice, LLP, the sublease was never

amended to replace Arkin Kaplan with AKR as a signatory to the sublease. Nonetheless, from 2006 until its dissolution in 2012, AKR's payment of rent while in possession of the premises created a presumption of an assignment of the sublease (*see Salvatore R. Beltrone Marital Trust II v Lavelle & Finn, LLP*, 22 AD3d 936, 937 [3d Dept 2005]).

Moreover, we find sufficient facts in the record to support a finding that AKR assumed Arkin Kaplan's obligations under the sublease (*see Probst v Rochester Steam Laundry Co.*, 171 NY 584, 588-589 [1902]; *Gateway I Group, Inc. v Park Ave. Physicians, P.C.*, 62 AD3d 141, 147-148 [2d Dept 2009]). AKR exercised the option to extend the sublease for a five-year period, and represented itself to be the subtenant under the sublease, both to the sublandlord and in various sub-sublease agreements with third parties—sub-subleases to which the sublandlord consented. On this basis, among others, we find that AKR is liable for any obligations under the sublease until the expiration of the extended period.

Finally, the evidence in the record does not support the motion court's finding that Arkin Solbakken is the successor to AKR. In drawing its conclusion, the court pointed to the fact that Arkin Solbakken was "carrying on the business of AKR by having taken possession of the Premises upon AKR's dissolution." However, when defendants Kaplan and Rice commenced their new firm, Kaplan Rice, they too acquired the right of possession of the premises upon the dissolution of AKR. Moreover, although Arkin amended the AKR certificate of registration to reflect the new firm name of Arkin Solbakken, the amended certificate was immediately changed and a new filing registering Arkin Solbakken as a limited liability partnership became effective. As to Arkin's attempts to evict defendants from the premises for nonpayment of rent, his actions could reasonably have been based on his remaining rent obligations under the sublease.

We have considered the parties' remaining arguments and find them unavailing. Concur—Acosta, J.P., Andrias, Moskowitz and Manzanet-Daniels, JJ.